# IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF TEXAS

### AMARILLO DIVISION

| | | |
|---|---|---|
| JAIRO PINA-RODRIQUEZ, | § | |
| | § | |
| PLAINTIFF, | § | |
| vs. | § | CIVIL ACTION CAUSE NUMBER |
| | § | |
| HEMPHILL COUNTY SHERIFF MORSE | § | 2:13-CV-124-J |
| BURROUGHS, CHIEF DEPUTY JAMES | § | |
| PEARSON, DEPUTY JOSE A. RAMOS, and | § | |
| HEMPHILL COUNTY JUDGE GEORGE | § | |
| BRIANT, | § | |
| DEFENDANTS. | § | |

### MEMORANDUM OPINION AND ORDER

Plaintiff Jairo Pina-Rodriquez filed this lawsuit in state court against Hemphill County officials claiming that they violated his civil rights with respect to so-called United States Immigration Customs and Enforcement (ICE) documents known as "ICE holds." Plaintiff's state lawsuit was removed to this Court. Defendants have moved pursuant to Rule 12(b) for dismissal of all of the Plaintiff's claims which are asserted against them in their official and individual capacities. Plaintiff has filed no response in opposition to either of those motions, and the time for him to do so has long expired. For the following reasons, Defendants' motions are granted in part and denied in part as follows.

### Standards

The federal rules require that a pleading need only furnish a short and plain statement of the claim showing that the pleader is entitled to relief. Fed. R. Civ. Pro. 8(a). Rule 12(b)(1) & (6) motions therefore function to test the formal sufficiency of a complaint against the liberal pleading requirements of Rule 8. In analyzing a motion to dismiss under Federal Rule of Civil Procedure 12, the Court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff. *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004).

To survive, "the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007)(quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007)). "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 127 S.Ct. at 1964-65 (citations, quotation marks, and brackets omitted). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Katrina Canal*, 495 F.3d at 205 (quoting *Twombly*, 127 S.Ct. at 1965).

Although a court accepts all well-pleaded facts as true, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, __ U.S. __, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 1950 (quoting Fed. R. Civ. Pro. 8(a)(2)).

### Discussion and Analysis

Plaintiff Pina-Rodriquez filed his original state-court petition listing numerous claims and causes of action against the four Defendants. After removal he did not file an amended complaint. Plaintiff alleges that he is a Mexican national who was arrested in Hemphill County, Texas, at least four times for driving without a valid license, and at least once for recklessly engaging in conduct that placed another in imminent danger of serious bodily injury, a class A misdemeanor violation of Texas Penal Code § 22.05(a) punishable by up to one year in jail and a fine. Plaintiff does not allege that he did have a valid driver's license. Plaintiff does not allege that there was not probable cause of any of his arrests, or that he was innocent of any criminal charges brought against him.

Instead, Plaintiff alleges that he became an "easy 'target'" of the Hemphill County Sheriff's Department. Plaintiff complains that because he was "a Latino," instead of being issued a ticket he was "routinely stopped for pre-texual reasons and checked for no driver's license, arrested, incarcerated," and later released on bond. Plaintiff alleges that at some point the U.S. Immigration and Customs Enforcement placed a "verbal ICE hold" upon him, perhaps followed up by a written ICE hold form, and thereafter he was not allowed to be released on perhaps one or two, or more, of his new criminal cash bonds.

Plaintiff complains that he was released from county jail into ICE custody, returned for one or more occasions for one or more of his criminal pre-trial hearings and/or trials, but eventually deported from the United States. The record in this case states that he currently resides in Mexico, and is not able to return legally into the United Sates without legal permission from the federal government, which he has been unable to obtain. In this civil rights suit, Plaintiff seeks between $200,000 and $1,000,000 in actual and punitive damages, attorney's fees, and costs against the Defendants, plus declaratory and injunctive relief. Plaintiff's claims overlap insofar as he seeks recovery for the same wrongs under more than one theory of law.

Defendants are the county judge, county sheriff, chief deputy, and a deputy sheriff of Hemphill County, Texas. No federal agency or agent is a party to this suit. All of the Plaintiff's claims involve personal interactions with him in the performance of the Defendants' official duties. County judge Briant and sheriff Burroughs are sued in both their official and individual capacities. The capacities in which chief deputy Pearson and deputy Ramos are sued is not stated in Plaintiff's petition.

The first instance sued upon involved chief deputy Pearson's May 29, 2011, interview of Pina at Pina's parents' home. *See* Plaintiff's original petition at ¶¶ 14 & 15. Plaintiff complains that deputy

3

Pearson went to the home at 10:30 pm to interview Pina, was informed that Pina had an attorney on one or more of his then-pending criminal charges, and that Pearson thereafter terminated the interview.

The second instance involved a June 2, 2011, interrogation by deputy Ramos at the sheriff's department. *See* petition at ¶¶ 16-17. Plaintiff complains that Ramos gave him a *Miranda* warning in Spanish, not in English, and then interrogated Pina in English without the assistance of a Spanish translator or Pina's attorney. Plaintiff states that he entered the United States as a 10-year old child. He does not state his current age, but presumably is old enough to drive an automobile and speaks some English.

Plaintiff complains that when Pina informed Deputy Ramos that he did not understand all of the questions in English and "requested that he be allowed to contact his attorney," "Ramos ignored the comments and continued to question Pina in English." *Id.* Plaintiff does not allege that he invoked his right to refuse to answer Ramos' questions without his attorney being present, that he informed Ramos that he was exercising his right to remain silent but was questioned nonetheless, or that he informed Ramos that he wanted to wait to answer any further questions until he had consulted his attorney but Ramos refused to wait and continued questioning him. Plaintiff does not seek in this lawsuit to suppress any of the non-custodial statements he made to Ramos on this date, or any earlier statements he had made to Pearson. Plaintiff does not allege that he sought in his state court criminal actions to suppress any such statements. Plaintiff does not plead whether any of those state criminal actions are, or are not, still pending, and does not reveal any of his criminal cases' outcomes.

The third instance involved Sheriff Burroughs' June 8, 2011, execution of an arrest warrant for recklessly engaging in conduct that placed another in imminent danger of serious bodily injury, the alleged class A misdemeanor violation of Texas Penal Code § 22.05(a). *See* petition at ¶¶ 18-19.

4

Plaintiff complains that on the day of his arrest sheriff Burroughs "denied Pina the right to execute or post a bail bond of $2500 because ICE 'allegedly' had issued an I-247 Form to the Hemphill County Jail in the name of Pina," but neither Pina or his attorney received a copy of the I-247 Form at the time, even though a copy of the form was apparently then requested by Pina's attorney. Presumably that referenced form is a written "ICE hold" form. Plaintiff does not explain how or why he had an alleged right to release on June 8, 2011, the day of this arrest.

The fourth alleged violation of Plaintiff's rights allegedly occurred on June 9, 2011, the date after his reckless conduct arrest, when some unnamed person at "the Hemphill County Sheriff Department denied Pina a phone call to his attorney." Plaintiff complains that he "was repeatedly denied the right to a phone call to his attorney Hall after Pina was incarcerated in the Hemphill County Jail and detained with the I-247 Form," even though "Pina did not request a court-appointed attorney." *See* petition at ¶¶ 19-20. Plaintiff alleges in earlier paragraphs that his attorney was aware of his arrests and was in communication with the sheriff's office regarding his release on bond on his June 8, 2011, arrest. Plaintiff appears to allege a violation of a constitutional right of in-custody pre-trial detainees to call their attorney from the jail whenever they want. It is unclear what the relevance, if any, is of his "non-request of a court-appointed attorney" allegation.

The fifth alleged violation of Plaintiff's rights allegedly occurred occurred on June 8, 2011, when sheriff Burroughs did not did not "allow Pina to post a $2500 bail bond because of the I-247 Form," even though "on or about June 10, 2011, attorney Hall placed the Defendants on notice that the I-247 Form was not a federal arrest warrant." *See* petition at ¶¶ 21, 52-54. Plaintiff alleges that "Pina's family and attorney Hall attempted to post a cash bail bond on behalf of Plaintiff Pin a at the Hemphill County Jail after Pina's arrest on June 8, 2011," but that unnamed "[e]mployees at the

5

Hemphill County Jail refused to accept a $2500 cash payment from Pina's family for Pina's bond." *See* petition at ¶ 22.

The sixth alleged violation of Plaintiff's rights allegedly occurred when he "was not allowed to contact the Mexican Embassy while incarcerated in the Hemphill County Jail." *See* petition at ¶ 21.

The seventh alleged violation of Plaintiff's rights allegedly on September 7, 2011, when sheriff Burroughs again allegedly "denied Pina's bond payment," which denial "prevented Pina's release from the Hemphill County jail on September 9, 2011 pursuant to the language in the I-247 Form." Plaintiff also complains that the sheriff further denied release because judge "Briant had not signed an order for Pina's bail reduction" from $2,500 to $1,000. Plaintiff complains that he "was released from the Hemphill County Jail on September 12, 2011 and placed in the custody of Immigration Customs and Enforcement (ICE)." *See* petition at ¶¶ 23 & 40-43. However, Plaintiff also alleges that "Sheriff Burroughs allowed attorney Hall to post Pina's $1000 bail bond on September 8, 2011." *See id.* at ¶ 43. These allegations appear inconsistent; either Hall was allowed to post bond, or he was not.

Plaintiff explains by alleging that Burroughs "intentionally delayed the posting of Pina's $1,000 bail until September 8, 2011 to prevent Pina's release from the Hemphill County Jail," knowing that "ICE agents would not travel to Hemphill County, Texas on Fridays because the distance to Canadian, Texas created logistical problems for ICE agents transporting detainees with an I-247 Form." He alleges that the "Defendants delayed the posting of Pina's criminal bail bond so that ICE would have additional time or more than 48 hours," excluding Saturdays, Sundays and holidays, "to assume custody of Plaintiff, Pina." He alleges that Burroughs contacted ICE on or about September 8, 2011 and informed the agents that Pina's bond was posted. *See* petition at ¶¶ 42-46, 52-54.

Plaintiff alleges that the "I-247 Form excludes weekends and holidays when calculating the 48 hour window such that the Defendants' intentional or reckless conduct to delay the execution of Pina's bail bond by one day would insure Pina would be transferred to the custody of ICE on the following Monday, September 12, 2011." *See* petition at ¶¶ 42-46, 52-54.   Plaintiff alleges any contrary interpretation of ICE hold requirements was in furtherance of a conspiracy to deny him pre-trial release.

The eight alleged violation of Plaintiff's rights allegedly occurred when his attorney filed a request for a bond reduction on July 13, 2011.   County judge Briant denied Pina a bond reduction despite the fact that Pina had been incarcerated in excess of 30 days for the offense of driving without a valid driver's license, an alleged due process violation which the Plaintiff attributes to the sheriff's unconstitutional policy regarding verbal and written ICE holds. *See* petition at ¶¶ 27, 28-46.

The ninth alleged violation of Plaintiff's rights allegedly occurred on August 16, 2011, when Plaintiff "Pina attempted to pay the Hemphill County Sheriffs Department $2500 cash to post the bail for" himself, but was "denied the right to execute the bail bond based on the I-247 Form" "because the Defendants did not understand the language of the I-247 Form." *See* petition at ¶ 31.   Plaintiff alleges regarding this incident "Sheriff Burroughs informed attorney Hall the I-247 Form represented a federal order," and that "Burroughs was authorized to make decisions about Plaintiff Pina's bond." *See id.*

Plaintiff alleges a series of events that have no apparent legal significance, except as possibly conspiratorial acts.   Plaintiff complains that judge Briant issued a bench warrant to extradite Pina back to the Hemphill County jail from ICE's custody on September 13, 2011.   He complains that on September 14, 2011, Pina was returned to the Hemphill County Jail.   Plaintiff alleges that his attorney requested a copy of the I-247 Form issued by ICE on numerous occasions, but the Hemphill County

7

jail did not provide criminal defense counsel with a copy of the I-247 Form issued by ICE. Plaintiff alleges that he was provided a Notice to Appear by ICE on October 18, 2011. Plaintiff complains that his attorney did not receive a copy of Pina's "A-file" from ICE until December 1, 2011. *See* petition at ¶¶ 24-39.

Plaintiff alleges that motions were filed in his various criminal cases, complains about trial court settings in one or more of the Plaintiff's five or more criminal cases, complaints about the denial of Plaintiff's alleged "right to an attorney bond," and about the denial of a state-court application for a writ of habeas corpus because of trial delays. He complains about the State's witnesses testifying, or the lack thereof, at a September 1, 2001 criminal pretrial hearing. He complains about other defense counsel's involvement in Plaintiff's criminal proceedings, which allegedly caused judge Briant to deny Pina release on a personal bond. *See* petition at ¶¶ 24-39. He complains that judge Briant set one of his criminal cases for trial on September 21, 2011, then denied him his right to a jury trial on that date, and did all that when Plaintiff was technically in ICE custody instead of in the sole official custody of the county jail. *See* petition at ¶¶ 50.

The tenth alleged violation of Plaintiff's rights allegedly occurred when judge Briant, in setting one of the criminal cases for trial on a trailing docket, and sheriff Burroughs, in denying Plaintiff's counsel Plaintiff "access to various documents concerning Pina" (which documents are not specified) and denying Pina release on bond, "acted to impede and interfere with Pina's constitutional right to an attorney." Plaintiff further alleges that, acting together, judge Brian and sheriff Burroughs: 1) denied Pina "the right to a jury trial on September 21, 2011" (the first day of judge Briant's trailing docket, on which one of Plaintiff's criminal cases was set as the number two case), 2) "acted to interfere with Pina's constitutional right to personal freedom and liberty," 3) "acted to prevent attorney

Hall from having proper time to prepare for the trial," and 4) violated both Pina's rights to a writ of habeas corpus and to pretrial release on bond beginning on or about June 7 or 8, 2011, through at least September 21, 2011. *See* petition at ¶¶ 49-57, 62.

Plaintiff complains about various conspiracies and actions taken, or not taken, by federal ICE agents beginning in September, 2011, and afterwards. *See* petition at ¶¶ 47-49, 52-63. He alleges that he "was transferred back to the custody of ICE on September 22, 2011 and sent to Rolling Plains Detention Center in Haskell, Texas, on or about September 23, 2011." Thereafter, he "was transferred to Bedford, Texas, on a date after September 23, 2011." He alleges that the transfers "between ICE and the Hemphill County Jail were intentional act[s] to prevent attorney Hall from locating Pina so that attorney Hall could prepare for Pina's trial that was rescheduled from September 21, 2011 to October 13, 2011," which was apparently the term of the training docket upon which one of Plaintiff's criminal cases was set. Plaintiff alleges that he "was returned to Hemphill County, Texas, approximately 8 hours before his rescheduled trial." Neither ICE or its agents are parties to this lawsuit.

Plaintiff complains that he "was assessed court costs October 14, 2011 in the amount of $977.60 and that amount was deducted from the bail posted by attorney Hall on behalf of Pina." He complains that his attorney (Hall) "was not provided a copy of the Court Costs on October 13, 2011 despite Hall's request for an accounting."

Based upon all of these alleged facts, Plaintiff claims that "Defendant Judge Briant acting as the representative of the Hemphill County Government and Sheriff Burroughs as the duly-elected Sheriff of Hemphill County violated the Plaintiff Pina's right to due process and conspired to violate the constitutional guarantees of Jairo Pina-Rodriquez." *See* petition at ¶ 64. Defendants seek dismissal of all of these claims.

*Title 42, United States Code, Section 1983 (§ 1983) Claims*

Plaintiff brings a § 1983 cause of action for damages against "the Defendants,"/[1] generally alleging the Defendants under color of law and to implement a policy, custom, usage or practice to deny, deprive and violate Plaintiff's civil rights, privileges or immunities when they denied him right to have reasonable bail set, to post bail, to life, liberty and/or property, the right to counsel, and the right to due process of law. Plaintiff alleges that the Defendants' actions were done in violation of various state and federal statutory and federal constitutional rights, including the 4th, 5th, 6th, 8th and 14th Amendments. Plaintiff's claims all arise out of his interactions with Defendants performing their official duties as county judicial and law enforcement employees.

*Section 1983 Claims Based Upon Texas Law*

This case was removed from state court. Plaintiff's state-court petition is not precise as to whether or not he asserts his civil rights claims upon federal law alone, or both federal and state laws. He pleads both, and specifically mentions the Texas Penal Code, the Texas Code of Criminal Procedure, the Texas Constitution, the Texas Freedom of Information Act, and other state laws as sources of his violated rights. However, a §1983 action may generally not be based on a violation of state law, *Ybarra v. Bastian,* 647 F.2d 891 (9th Cir. 1981); *State of Mo. ex rel. Gore v. Wochner,* 620 F.2d 183, 185 (8th Cir. 1980), including a state constitutional provision, *Eldridge v. Bouchard,* 645 F. Supp. 749 (W.D. Va. 1986), *aff'd,* 823 F.2d 546 (4th Cir. 1987), because purely state-created rights are not protected by § 1983. *Quinlan v. Fairman,* 663 F. Supp. 24 (N.D. Ill. 1987); *DeWalt v. Barger,* 490 F. Supp. 1262 (M.D. Pa. 1980).

---

[1]     That is, against all of the individually-named Defendants, in all their capacities.

It is only when such a violation has also resulted in infringement of a federal constitutional right – a federally-protected right – that the basis for a § 1983 cause of action exists. *State of Mo. ex rel. Gore, supra,* 620 F.2d at 185 ("Rights which derive solely from state law, however, cannot be the subject of a claim for relief under 42 U.S.C. § 1983."); *Ortega Cabrera v. Municipality of Bayamon,* 562 F.2d 91, 102 (1st Cir. 1977)("A violation of a federal constitutional provision must be shown.").; *Sigler v. Lowrie,* 404 F.2d 659, 662 (8th Cir.), *cert. denied,* 395 U.S. 940, 89 S.Ct. 2010, 23 L.Ed.2d 456 (1969)("Title 42 U.S.C. § 1983 is not concerned with mere violations of state law."). *Accord Screws v. United States,* 325 U.S. 91, 108, 65 S.Ct. 1031, 1038, 89 L.Ed. 1495 (1945)./[2]

While some personal interests in vested benefits provided to citizens under state law may be protected by the due process clause of the Fourteenth Amendment, *Perry v. Sindermann,* 408 U.S. 593, 92 S. Ct. 2694, 33 L. Ed. 2d 570 (1972), Plaintiff does not allege that he is a Texas citizen, and an individual's alleged general right to have state civil and criminal laws correctly obeyed and followed is not a federal right cognizable in a civil rights action. *McKinney v. George,* 556 F. Supp. 645 (N.D. Ill. 1983), *aff'd,* 726 F.2d 1183 (7th Cir. 1984). Therefore, all of Plaintiff's § 1983 claims for violations of rights which are alleged to arise under Texas law fail to state a federal claim for which relief can be granted. That does not, however, apply to Plaintiff's allegations based upon federal law.

*Fourth Amendment Claim*

The Fourth Amendment secures the right of the people to be free from unreasonable arrests. The fourth amendment generally protects only "unreasonable" searches and seizures. *United States*

---

[2]     "The problem is not whether state law has been violated but whether an inhabitant of a State has been deprived of a federal right by one who acts under 'color of any law.' He who acts under 'color' of law may be a federal officer or a state officer. He may act under 'color' of federal law or of state law. The statute does not come into play merely because the federal law or the state law under which the officer purports to act is violated. It is applicable when and only when someone is deprived of a federal right by the action." (Justice Douglas).

*v. Reyes,* 792 F.2d 536 (5th Cir. 1986). Warrantless searches and seizures are unreasonable under the fourth amendment unless they are supported by probable cause. *United States v. De Los Santos,* 810 F.2d 1326, 1335 (5th Cir. 1987). Plaintiff was arrested by sheriff Burroughs pursuant to an arrest warrant, and was incarcerated on one or more pending criminal charges which provided for a term of imprisonment of up to one year plus a fine, not a "fine only" as alleged by Plaintiff. Plaintiff therefore fails to allege facts that support a claim under the Fourth Amendment. Plaintiff's allegations do not support a claim for wrongful arrest or imprisonment against the sheriff, or any of his deputies, because the facts he has alleged do not make a plausible claim that probable cause was lacking for any of the arrests. *Brown v. Lyford,* 243 F.3d 185, 189 (5th Cir. 2001); *Sorrenson v. Ferrie,* 134 F.3d 325, 330 (5th Cir. 1998).

Section 1983 "is not itself a source of substantive rights," but merely provides "a method for vindicating federal rights elsewhere conferred." *Baker v. McCollan,* 443 U.S. 137, 145 n.3 (1979). Because a claim of alleged unlawful arrest or imprisonment brought under § 1983 imposes liability for violation of a constitutionally protected right, it cannot be viewed exclusively in terms of traditional tort law concepts. *Baker,* 443 U.S. at 142; *Harper v. Merkle,* 638 F.2d 848, 860 (5th Cir. 1981). "Section 1983 imposes liability for violations of rights protected by the Constitution, not for violations of duties of care arising out of tort law." *Baker,* 443 U.S. at 146. There is, therefore, no federally-based cause of action for an alleged unlawful arrest where a law enforcement officer had either an arrest warrant, or known probable cause for the arrest. Every arrest complained of here was either done with an arrest warrant, or probable cause existed because Plaintiff Pina was admittedly driving without a valid license, and arrest four or more times for that repeated offense. As discussed later, officers are entitled under Texas law to arrest an misdemeanor offender; Plaintiff was not entitled to only have a ticket issued instead of being arrested as a four-or-more-times repeat offender.

*All Section 1983 Claims Under the Fifth Amendment*

Asserting claims under the Fifth Amendment, Plaintiff alleges a "life, liberty or property" "due process of law" violation actionable pursuant to § 1983./[3] As Defendants correctly assert, Plaintiff's claims of a violation of the Fifth Amendment due process clause can not be brought in this lawsuit directly against any of the four defendants because none of them are federal employees.    The Fifth Amendment applies only to violations of constitutional rights by the United States or a federal actor. *See Jones v. City of Jackson*, 203 F.3d 875, 880 (5th Cir. 2000) ("the Fifth Amendment applies only to the federal government and its officers, and is therefore inapplicable to state actors").  Plaintiff does not allege that any of the Defendants were actually acting under authority of federal law, or that any of the Defendants were federal actors.  Plaintiff specifically alleges that the sheriff was acting under color of state law when refusing to allow Plaintiff to bond out of jail, while falsely claiming he was acting properly under federal law.  Therefore, Plaintiff has not asserted an actionable Fifth Amendment claim for an alleged violation of due process, or any other Fifth Amendment claim, against the four named state defendants.  *See Jones,* 203 F.3d at 880.

---

[3]      42 U.S.C. § 1983 provides in relevant part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . ..

In order to maintain a claim under 42 U.S.C. § 1983, a plaintiff must show two essential elements: 1) that defendants deprived them of a right secured by the Constitution of the United States, and 2) that this deprivation occurred while defendants were acting under color of State law. *Menchaca v. Chrysler Credit Corporation,* 613 F.2d 507, 510 (5th Cir. 1980).  Plaintiff can bring no 1983 cause of action for negligence by any Defendant in failing to stop an illegal action.  Negligence is not actionable under 42 U.S.C. § 1983. *Daniels v. Williams,* 474 U.S. 327, 106 S.Ct. 662, 666, 88 L.Ed.2d 662 (1986).  All of Plaintiff's "negligent" violations of constitutional rights allegations therefore fail to state a claim upon which relief may be granted, and these claims are hereby dismissed.

Plaintiff's petition is not clear as to whether he seeks to sue all of the Defendants, or just two of them (the sheriff and the judge), on a tortuous co-conspirator theory for violations of his federal rights. Plaintiff specifically alleges that certain named federal ICE agents, judge Briant, sheriff Burroughs, and perhaps one or more Hemphill County sheriff's department employees, jointly conspired to deny Plaintiff his constitutional due process right to be released from jail on bond pending trial on his criminal charges by use of ICE holds, verbal or written, and further violated by when Plaintiff was actually taken into, and transferred to and from, federal custody on his state-court criminal charges. Plaintiff seeks actual and punitive damages on those conspiracy claims.

While he individually names, but does not sue, ICE itself or any of the individually-named ICE agents, those federal conspiracy claims sound in tort and, if they are properly actionable in federal court against ICE, acting through its employees, agents and co-conspiratory agents, must be brought in this court under the Federal Tort Claims Act, 28 U.S.C. §§ 2671-2680. However, Plaintiff has not shown that he filed an administrative claim for damages under that Act.

Timely filing of an administrative claim with the appropriate government agency is required by 28 U.S.C. § 2675(a). Such a claim must be submitted before the two-year period of limitations has run. *See* 28 U.S.C. § 2401(b). That two-year period ended under the facts of this case not later than December 2, 2013, the day after the last complained-of date pled in Plaintiff's petition regarding a federal agent's co-conspirators' actions. Failure to timely file an administrative claim mandates dismissal of Plaintiff's federal tort conspiracy claims as pled here, *Uithoven v. U.S. Army Corps of Engineers*, 884 F.2d 844, 846 (5th Cir. 1989), because "[e]xhaustion of administrative remedies is jurisdictional prerequisite to suit under the Federal Tort Claims Act, and absent compliance with the statute's requirement the district court [i]s without jurisdiction." *McAfee v. Fifth Circuit Judges*, 884

F.2d 221, 222-23 (5th Cir. 1989)(citing *Rise v. United States*, 630 F.2d 1068, 1071 (5th Cir. 1980);

28 U.S.C.A. §§ 1346(b), 2671 *et seq.*)./[4]

Such federal tort claims, if he intends to allege them in this case against ICE or any of its

named employees and/or agents on a co-conspirator liability basis, are dismissed with prejudice for

failure to exhaust administrative remedies, and because limitations has now run.

*Judge Briant's Judicial Immunity*

Hemphill County Judge George Briant is the judge who presided over one or more of Plaintiff

Pina's criminal cases. Where a judicial officer is being sued for actions undertaken in his or her

official capacity, as here, the suit squarely raises the issue of judicial immunity. *Elliott v. Perez,* 751

F.2d 1472, 1482 (5th Cir. 1985). In that situation, a plaintiff is required to file "a detailed complaint

alleging with particularity all material facts on which [he contends] will establish [his] right to

recovery, which will include detailed facts supporting the contention that the plea of immunity cannot

be sustained." *Id.* Plaintiff has detailed the facts on which he contends his right to recovery exists.

Plaintiff contends that because he does not sue Briant for actions taken in his judicial capacity, instead

alleging that he is suing upon actions taken in Briant's official administrative capacity only, judicial

immunity can not be sustained in this case. However, every single alleged individual action for which

Briant is sued in this case was clearly taken in Briant's judicial capacity.

The fact that an individual acts in a judicial capacity generally immunizes that person for a suit

for money damages. *See Stump v. Sparkman,* 435 U.S. 349, 355-57, 98 S.Ct. 1099, 1104-05, 55

---

[4]     Exhaustion of administrative remedies is a jurisdictional prerequisite to suit under the
Tort Claims Act, and absent compliance with the statute's requirement a federal district court is without
jurisdiction. *Uithoven v. U.S. Army Corps of Engineers,* 884 F.2d 844, 846 (5th Cir. 1989); *Rise v.
United States,* 630 F.2d 1068, 1071 (5th Cir. 1980). Claims not brought under the Federal Tort Claims
Act but founded on the United States Constitution, not state tort law, are constitutional claims that do not
arise under the Act and are barred by sovereign immunity, unless one of the limited exceptions to
sovereign immunity are present. *Uithoven,* 884 F.2d at 846; *Boda v. U.S.,* 698 F.2d at 1176.

L.Ed.2d 331 (1978); *Malina v. Gonzales,* 1 F.3d 304 (5th Cir. 1993); (1992); *Adams v. McIlhany,* 764

F.2d 294 (5th Cir. 1985), *cert. denied,* 474 U.S. 1101, 106 S.Ct. 883, 88 L.Ed.2d 918 (1986). "A judge

is absolutely immune from liability for his judicial acts even if his exercise of authority is flawed by

the commission of grave procedural errors." *Stump,* 435 U.S. at 359, 98 S.Ct. at 1106. "A judge will

not be deprived of immunity because the action he took was in error, was done maliciously, or was in

excess of his authority; rather, he will be subject to liability only when he has acted in the 'clear

absence of all jurisdiction.'" *Id.,* 435 U.S. at 356-57, 98 S.Ct. at 1105 (quoting *Bradley v. Fisher,* 13

Wall. 335, 351, 20 L.Ed. 646 (1872)).[5] "Disagreement with the action taken by a judge ... does not

justify depriving that judge of his immunity," nor does the fact that tragic consequences ensue from

the judge's action deprive him of his absolute immunity. *See Stump,* 349 U.S. at 363-64, 98 S.Ct. at

1108-09.

In describing judicial immunity, the Supreme Court in *Pierson v. Ray,* 386 U.S. 547, 553-54

(1967) said:

> Few doctrines were more solidly established at common law than the immunity of judges from
> liability for damages for acts committed within their judicial jurisdiction, as this Court
> recognized in *Bradley v. Fisher,* 13 Wall. 335 (1872). This immunity applies even when the
> judge is accused of acting maliciously and corruptly . . . . It is a judge's duty to decide all cases
> within his jurisdiction that are brought before him, including controversial cases that arouse
> the most intense feelings in the litigants. His errors may be corrected on appeal, but he should
> not to fear that unsatisfied litigants may hound him with litigation charging malice or
> corruption. Imposing such a burden on judges would contribute not to principled and fearless
> decision making – but to intimidation.

*See, e.g. Mitchell v. McBryde,* 944 F.2d 229 (5th Cir. 1991); *Holloway v. Walker,* 765 F.2d 517, 522

(5th Cir.), *cert. denied,* 492 U.S. 921 (1986); *McAlester v. Brown,* 469 F.2d 1280, 1282 (5th Cir.

1972).

---

[5]      *Accord Johnson v. Kegans,* 870 F.2d 992, 995 (5th Cir.), *cert. denied,* 492 U.S. 921, 109
S.Ct. 3250, 106 L.Ed.2d 596 (1989)(A judge is absolutely immune for all judicial acts "not performed in
clear absence of all jurisdiction, however erroneous the act and however evil the motive.").

There are only two circumstances where immunity is breached. First is when a judge acts in a nonjudicial function, for example as a member of a nonjudicial body or when engaging in personnel matters. The second is when the judge acts in complete absence of all jurisdiction. In order to reach this second circumstance, a judge must proceed in an area where it is clear he cannot act. *See Brewer v. Blackwell*, 692 F.2d 387, 397 (5th Cir. 1982)(state court judge making an invalid arrest). That is not the case, or the facts, alleged here.

The Fifth Circuit utilizes a four-part test to determine if an act is a "judicial act." These four parts are whether:

1) the act complained of is a normal judicial function,
2) the events occurred in the judge's court or in his chambers,
3) the controversy centered around a case then pending before the judge, and
4) the confrontation or occurrence arose directly and immediately out of a visit to the judge in his or her judicial capacity.

*See Brewer v. Blackwell*, 692 F.2d 387, 396-97 (5th Cir. 1982); *McAlester v. Brown*, 469 F.2d 1280, 1282 (5th Cir. 1972)./[6]

These four factors are to be broadly construed in favor of immunity. Where judges are acting within the scope of their judicial duties and the complaint contains no allegation to the contrary, the defendant judge possesses absolute immunity. *Stump v. Sparkman,* 435 U.S. 349, 98 S.ct. 1099, 68 L.Ed.2d 326 (1981); *Krempp v. Dobbs,* 775 F.2d 1319, 1321 (5th Cir. 1985). Furthermore, this absolute immunity is an immunity from suit, not simply protection from any ultimate assessment of monetary damages. *Mireles v. Waco,* 502 U.S. 9, 11, 112 S.Ct. 286, 288, 116 L.Ed.2d 9 (1991).

---

[6]     The Supreme Court has, for purposes of the judicial immunity doctrine, rejected the argument that lack of formality involved in a court's consideration of a petitioner's application prevented it from being a "judicial proceeding." *See In re Summers*, 325 U.S. 561, 65 S.Ct. 1307, 89 L.Ed. 1795 (1945). Therefore even the informal nature of a hearing or proceeding, for example, denial of an oral motion made in a telephone call, does not prevent it from being a judicial act or proceeding.

Granting or refusing bond, setting the amount of a criminal defendant's bond, reducing or refusing to reduce a bond, permitting a cash bond, or not, deciding to permit release on a personal bond, or not, choosing when to rule upon such matters, setting pre-trial hearings in a case, refusing requests for a continuance of hearings, resetting a hearing for later, or not, setting a trial date, calling a case for trial on any particular date, calling cases set for trial in a particular order, or out of the order a criminal defendant or his counsel might request, refusing to explain the court's rulings, refusing an alleged right to "an accounting" of court costs assessed – in other words, the very acts complained of – are all normal judicial functions. Those complained-of events all occurred in judge Briant's criminal court proceedings in Plaintiff's criminal case(s). The controversy here centered around one or more of Plaintiff's criminal cases then pending before judge Briant. The occurrences complained of here arose directly and immediately out of a visit to the judge in his judicial capacity, in a courtroom or out. All of Plaintiff's claims against Briant are barred by Briant's absolute immunity from suit, and will be dismissed with prejudice.

### *Denial of Fifth and Sixth Amendment Right to Call an Attorney*

Plaintiff sues deputies Ramos and Pearson on the factual basis that, on two separate occasions, they separately questioned him about suspected criminal behavior. Ramos questioned the Plaintiff at his parent's home and Pearson questioned Plaintiff when he went to the sheriff's office. After Plaintiff informed the deputies that he was represented by attorney Hall on one or more of his other then-pending criminal cases, Plaintiff alleges that both deputies allegedly violated his constitutional right to call Hall during the investigatory interview. That allegation fails to state a civil rights claim upon which relief can be granted.

The Sixth Amendment right to counsel provides a person with the assistance of a lawyer at or after the time that judicial proceedings have been initiated against him. *See Henderson v. Quarterman,*

460 F.3d. 654, 662 (5th Cir. 2006). Plaintiff has not, however, alleged that counsel was denied by Pearson or Ramos at or after new criminal proceedings had been initiated by an arrest or an indictment or upon an information. Accordingly, his claims against Defendants Pearson and Ramos for violation of the Sixth Amendment right to counsel must be dismissed. Further, to the extent that Plaintiff is asserting their violation of an alleged right to call his counsel while he was a pre-trial detainee in the county jail, Plaintiff has failed to plead sufficient facts to state such a claim.

Plaintiff also contends that these two Defendants violated his Fifth Amendment right to counsel. This claim must be dismissed because the so-called "Fifth Amendment right to counsel" exists only during custodial interrogations occurring before formal charges are being sought against an individual. *See Lucas v. Johnson,* 132 F.3d 1069, 1081 (5th Cir. 1998). Plaintiff was not, however, denied counsel during any custodial interrogations by Pearson or Ramos. The Fifth Amendment right to counsel was not implicated under the facts pled. Plaintiff has not alleged that he requested an attorney during a custodial interrogation, but was denied counsel. The two specifically-alleged interrogations during which he was questioned by Ramos and Peterson were non-custodial. He does not allege that he was arrested during or at the conclusion of either interrogation. Consequently, Plaintiff has failed to state a claim for relief for a violation of the Fifth Amendment right to counsel.

Accordingly, the Plaintiff's claims against Defendants Pearson and Ramos for violation of his Fifth and Sixth Amendments' right to counsel are dismissed.

### Denial Of Contact With Mexican Embassy/Consulate After Arrest

Plaintiff complains that he was not allowed to contact the Mexican Embassy/Consulate during his incarceration in the Hemphill County Jail. *See* original petition at ¶ 21. Although not specifically listed as a cause of action, he appears to assert notice of a violation of Article 36 of the Vienna

Convention. The United States has been a signatory to the relevant Vienna Convention since 1969; it requires member nations to permit detained foreign nationals access to their consular officers.

Ratified treaties become the law of the land on an equal footing with federal statutes. U.S. Const. art. VI, cl. 2. They are to be construed initially according to their terms. *See United States v. Alvarez-Machain,* 504 U.S. 655, 663 (1992). As the Fifth Circuit explained:

> "Treaties are contracts between or among independent nations." *United States v. Zabaneh,* 837 F.2d 1249, 1261 (5th Cir. 1988). As such, they do not generally create rights that are enforceable in the courts. *United States v. Li,* 206 F.3d 56, 60 (1st Cir. 2000); *see also Goldstar v. United States,* 967 F.2d 965, 968 4th Cir. 1992 ("International treaties are not presumed to create rights that are privately enforceable"); *Matta-Ballesteros v. Henman,* 896 F.2d 255, 259 (7th Cir. 1990)("It is well established that individuals have no standing to challenge violations of international treaties in the absence of a protest by the sovereigns involved.").

*United States v. Jimenez-Nava,* 243 F.3d 192, 195 (5th Cir. 2001).

The Fifth Circuit has held that Article 36 of the Vienna convention does not create an individually-enforceable right. *See Medellin v Dretke,* 371 F.3d 270, 280 (5th Cir. 2004)(citing *United States v. Jimenez-Nava,* 243 F.3d 192, 198 (5th Cir. 2001)); *Garcia v. Quarterman,* 573 F.3d 214, 217 n.14 (5th Cir. 2009). Plaintiff's claim regarding denial of contact with the Mexican Consulate will be dismissed with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6).

### Jailing Persons Charged with Class C Misdemeanor

Plaintiff alleges a civil rights claim based upon the fact that he was jailed instead of ticketed when repeatedly charged with a Class C misdemeanor for driving without a valid license. *See* original petition at ¶ 74. That claim is dismissed because he has failed to allege factual allegations supporting a claim upon which relief can be granted.

The Supreme Court has held that an officer who has probable cause to believe that an offense has occurred in his presence may arrest the suspected offender without a warrant without offending the Fourth Amendment, even where the offense is a minor one and punishable only by fine. *Atwater v. City of Lago Vista,* 532 U.S. 318, 354 (2001). Because he has not stated a claim upon which relief can be granted under § 1983, Pina's claims of custom, practice or policy of jailing himself and/or persons charged with Class C misdemeanors against the County is dismissed with prejudice. *See also Iqbal,* 556 U.S. at 678.

### *Declaratory Judgment Action*

Plaintiff seeks a judgment declaring that the Defendants "incarcerated the Plaintiff under the color of law" in violation of his rights. *See* original petition at ¶ 88. Essentially, Plaintiff seeks a declaration of liability for the alleged past conduct which forms the basis of Plaintiff's actions. Plaintiff is not asking the Court to be relieved of a threat of suit by asserting a valid defense. Plaintiff does not seek to avoid or "cut off" future damages that might result due to a delayed assertion of his declaratory judgment claim; he was released from jail and has now been deported from the United States.

A decision on Plaintiff's requested declaratory relief will not resolve the entire controversy between the parties, but instead will only adjudicate alleged wrongful conduct, which is the purpose in bringing his civil rights claims and not an appropriate function of declaratory relief. The "declaratory judgment vehicle . . . is intended to provide a means of settling an actual controversy before it ripens into a . . . breach of a contractual duty." *Scott-Burr Stores Corp. v. Wilcox*, 194 F.2d 989, 990 (5th Cir. 1952). The purpose of the Declaratory Judgment act is not the declaration of non-liability for past conduct, but to settle actual controversies before they ripen into violations of the law or breach of avoidable damages to those uncertain of rights. *Chevron U.S.A., Inc. v. Traillour Oil*

21

*Co.,* 987 F.2d 1138, 1154 (5th Cir. 1993). Pina's declaratory judgment claim against the County and its sheriff's office is dismissed with prejudice.

### Injunctive Relief

Plaintiff seeks injunctive relief against the Hemphill County Sheriff's office and Hemphill County, Texas./[7] The proposed injunction would require the county to properly comply with federal and state laws relating to release on bail. However, he has failed to allege a likelihood of a future violation of his rights. There is no allegation that a future controversy is likely, since he has been deported from the United States, can not legally return to Hemphill County, Texas, and currently resides in Mexico. Plaintiff does not claim that he faces a high probability of real and immediate harm in the future.

For a plaintiff to have standing to seek federal injunctive relief, he is required to show that there is reason to believe that he would directly benefit from the equitable relief sought. *Plumley v. Landmark Chevrolet,* 122 F.3d 308, 312 (5th Cir. 1997). A plaintiff seeking injunctive relief based upon an alleged past wrong must show that a "real or immediate threat" exists that he will be wronged again. *Plumley,* 122 F.3d at 312 (citing *City of Los Angeles v. Lyons,* 461 U.S. 95, 101, 111, 103 S. Ct. 1660, 1665-69, 75 L. Ed. 2d 675 (1983). *See also Hainze v. Richards,* 207 F.3d 795, 802 (5th Cir. 2000), *cert. denied,* 531 U.S. 959, 121 S. Ct. 384, 148 L. Ed. 2d 296 (2000). "[P]laintiffs lack standing to seek prospective relief against judges where the likelihood of future encounters is speculative." *Bauer v. Texas,* 341 F.3d 352, 358 (5th Cir. 2003)(citing *Adams v. McIlhaney,* 764 F.2d 294, 299 (5th Cir. 1985); *Society Of Separationists, Inc. v. Herman,* 959 F.2d 1283 (5th Cir. 1982)).

---

[7]     Plaintiff makes numerous references to "Hemphill County Sheriff's Department" in his original petition. The Hemphill County Sheriff's Department is not a legal entity subject to suit. *See Darby v. Pasadena Police Dep't,* 939 F.2d 311, 313 (5th Cir. 1991); *see also Dean v. Barber,* 951 F.2d 1210, 1214 (11th Cir. 1992)("Sheriff's departments and police departments are not usually considered legal entities subject to suit").

Plaintiff lacks standing to seek future injunctive relief against Hemphill County or its sheriff's office. *See Armstrong v. Turner Industries, Inc.,* 141 F.3d 554, 563 (5th Cir.1998)(a party's failure to allege future injury precludes injunctive relief for lack of standing). For the same reasons, Plaintiff also lacks standing to seek declaratory relief. *Bauer v. Texas,* 341 F.3d 352, 358 (5th Cir. 2003). His requests for injunctive, and declaratory, relief are therefore dismissed with prejudice.

### Intentional Torts Brought Under State Law

Plaintiff sues under state law for numerous intentional torts. The intentional torts alleged by Plaintiff which are brought pursuant to Texas law are barred, except where allowed by the Texas Tort Claims Act (TTCA) or some other specific statutory waiver. Plaintiff cites no state statute waiving immunity from suit, and other than the TTCA cited by the Defendants, the Court has not been directed to any law waiving immunity from suit for the alleged intentional torts. When a plaintiff asserts a state tort theory against a Texas government unit, his claim is held to arise under the TTCA. *See Mission Consolidated Ind. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 659 (Tex. 2008)(citing *Newman v. Obersteller*, 960 S.W.2d 621, 622-23 (Tex. 1997)). The TTCA is the only vehicle through which one may recover on a state law tort theory against a Texas governmental unit, and "all tort theories alleged against a governmental unit, whether it is sued alone or together with its employees, are assumed to be 'under the [Act].'" *Garcia,* 253 S.W.3d at 658-59.

"Although the Texas Tort Claims Act waives sovereign immunity for certain torts, the intentional torts alleged by [the Plaintiff here] fall outside that waiver." *Pearlman v. City of Fort Worth,* 400 Fed. Appx. 956, 959 (5th Cir. 2010)(citing *Taylor v. Gregg,* 36 F.3d 453, 457 (5th Cir.1994)). That is because intentional torts are not permitted to be brought under the TTCA. *Alcala v. Tex. Webb County*, 620 F.Supp.2d 795, 802 (S.D. Tex. 2009)(the TTCA "explicitly states that it

does not extend its limited waiver of immunity to claims 'arising out of assault, battery, false imprisonment, *or any other intentional tort.*'")(emphasis in original).

Therefore, all intentional tort claims against the individual employee Defendants sued in their official capacities, which are arguably asserted pursuant to the Texas Tort Claims Act, Texas common law and the cited Texas statutes, are dismissed with prejudice because the Texas Tort Claims Act does not waive Defendants' immunity from state-law based, intentional-tort lawsuits.

## Conclusions

Plaintiff's § 1983 claims against Defendant Pearson and Defendant Ramos, alleging that they denied him his right to call or consult with his attorney in violation of his constitutional rights, are dismissed with prejudice because they fail to state a claim upon which relief can be granted pursuant to 42 U.S.C. § 1983.

All of Plaintiff's § 1983 claims against Defendant Briant, alleging that he engaged in a conspiracy with the Sheriff and others to deny Plaintiff's right to execute or post a bail bond in violation of his statutory rights and/or constitutional "due process," equal protection or other rights, are dismissed with prejudice because Briant's entitlement of absolute judicial immunity results in Plaintiff's failure to state a claim upon which relief can be granted pursuant to 42 U.S.C. § 1983.

All of the Plaintiff's federal Fifth and Sixth Amendment "deprivation of life, liberty and property without due process of law" by denial of his"right to call his attorney" constitutional claims are dismissed with prejudice because he has failed to state a claim for which relief can be granted.

Plaintiff's federal constitutional tort claims asserting negligence in training and supervision are dismissed with prejudice because he has failed to state a claim for which relief can be granted.

Plaintiff's federal claim regarding denial of contact with the Mexican Consulate is dismissed with prejudice for failure to state a claim for which relief can be granted.

Plaintiff's constitutional equal protection and due process claims based upon the fact that he was jailed instead of ticketed when repeatedly charged with a Class C misdemeanor for driving without a valid license, and arrested on a Class A misdemeanor, are dismissed with prejudice for failure to state a claim for which relief can be granted.

Plaintiff's claims for injunctive relief is dismissed with prejudice, and for declaratory relief is also dismissed with prejudice for lack of standing and failure to state a claim for which relief can be granted.

The § 1983 claims remaining at this time in this lawsuit are the Plaintiff's Eighth and/or Fourteenth Amendment claims arising from alleged violations of his due process right to pre-trial release on bail that is not excessive. However, the specific facts underlying those claims are not clearly pled. It is unclear which of his numerous criminal cases he was denied release upon, which cases he sought bail in, which he did not seek bail in, if any, what form of bail was sought and denied as sought in which criminal cases, which forms of bail were approved by the presiding criminal court, in what amounts, and when, if that approved form or amount was reduced upon motion, or not, if any bail set was or was not excessive, and what causal effect or role, if any, the Hemphill County sheriff's office's custom, practices and policies regarding ICE holds had under those facts. Plaintiff may file an amended complaint setting forth in detail all of the alleged facts upon which his denial of bail claims are based. The Court will thereafter address Sheriff Burroughs' qualified immunity defense to that claim. Any such amended complaint must be filed on or before fourteen (14) days from the date of this order.

The only Defendant remaining in this federal lawsuit is Sheriff Burroughs, in his official capacity and in his individual capacity. Plaintiff's amended complaint is to clearly plead all of the

facts upon which he alleges Sheriff Burroughs is not entitled to qualified immunity in his individual capacity.

All intentional tort claims against the individual Defendants sued in their individual and official capacities, asserted pursuant to the Texas Tort Claims Act, Texas common law and the cited Texas statutes, are dismissed with prejudice.

Plaintiff's complaint is extensive and convoluted, and it is sometimes difficult to follow and understand the relief he is seeking and the alleged legal basis for each of his claims. Nevertheless, the Court has liberally construed Plaintiff's complaint in the light most favorable to him. Plaintiff clearly alleges state-law based claims of violations of the Texas constitution and Texas statutes. As a § 1983 federal civil rights action those claims are not viable, for reasons explained above. Plaintiff's intentional tort claims are also not viable for reasons explained above. The Court declines to exercise its supplemental jurisdiction over the Plaintiff's other remaining claims which are solely based upon Texas law, and those claims are hereby dismissed without prejudice. The remedy for those alleged violations is in the state courts.

It is SO ORDERED.

Signed this the _____//____ day of March, 2014.

MARY LOU ROBINSON
UNITED STATES DISTRICT JUDGE