**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF TEXAS**

**AMARILLO DIVISION**

| | | |
|---|---|---|
| STEVE HALL, *pro se*, | § | |
| | § | |
| PLAINTIFF, | § | CIVIL ACTION CAUSE NUMBER |
| v. | § | |
| | § | 2:13-CV-124-J |
| HEMPHILL COUNTY SHERIFF MORSE | § | |
| BURROUGHS, | § | |
| DEFENDANT. | § | |

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT
BURROUGHS' MOTIONS TO DISMISS AND FOR SUMMARY JUDGMENT**

Before the Court are Defendant Burroughs' motions to dismiss and for summary judgment as to all of the remaining claims asserted in this suit, which are the claims brought and sought to be brought by *pro se* Plaintiff Hall. Also before the Court are *pro se* Plaintiff Steve Hall's motions for leave to file another amended complaint, as well as a supplemental complaint by which Hall proposes to join four additional party defendants, to reopen all discovery, and to extend all other Rule 16 deadlines. For the following reasons, Defendant's motions to dismiss and for summary judgment are granted, and Plaintiff's motions for leave to file an amended and a supplemental complaint are denied.

**BACKGROUND FACTS**

Plaintiff Steve Hall was the attorney of record in this civil case for former Plaintiff Jairo Pina-Rodriquez. Without permission from the Court and long after the Rule 16 deadline for joinder of parties had passed, Hall filed an amended complaint adding himself as a *pro se* party-plaintiff. Thereafter, and long after the Rule 16 deadlines for both joinder of parties and filing of amended complaints had passed, Hall filed yet another amended complaint – without first seeking leave of

court to do so – adding declaratory judgment requests and civil rights claims brought on his own behalf and on behalf of Pina-Rodriquez. Still later, Hall filed untimely motions seeking leave to add four new party-defendants. On numerous meritorious grounds, Defendant Burroughs seeks dismissal of all of Hall's claims and causes of action.

All of the claims and causes of action asserted in this suit by Pina-Rodriquez have been dismissed with prejudice because Pina-Rodriquez, without cause or justification, failed to appear and participate at mediation of this case, to timely comply with his personal obligations under federal discovery rules, and to appear for his own deposition. Those failures were unexcused, unjustified, caused unreasonable delay of resolution of this case, and significantly prejudiced the Defendant. For those reasons, a final adverse judgment was entered against Pina-Rodriquez. This order considers only Plaintiff Hall's *pro se* claims, brought individually on his own behalf. Relevant to Hall's claims are the following dates and sequences of events in Pina-Rodriquez' criminal cases.

Pina-Rodriquez was arrested for Class A deadly conduct on June 7, 2011. Steve Hall was Pina-Rodriquez' criminal defense attorney on that charge. On June 7, 2011, Hemphill County Judge George Briant set Pina-Rodriquez' bond at $2,500.00. On June 9, 2011, the U.S. Department of Homeland Security (DHS) issued an immigration detainer, or an "ICE hold," requesting that Hemphill County maintain custody of Pina-Rodriquez for a period not to exceed 48 hours (excluding Saturdays, Sundays, and federal holidays) to provide DHS adequate time to assume custody of Pina-Rodriquez. Hall alleges that the first ICE detainer wrongfully prevented Hall from obtaining Pina-Rodriquez' release upon the $2,500 bond.

At a hearing on September 1, 2011, Judge Briant stated he would reduce Pina-Rodriquez' bail to $1,000.00. On Thursday, September 8, 2011, Briant signed an order reducing Pina-Rodriquez' bond to $1,000.00. On Thursday, September 8, 2011, at 3:05 p.m., Pina-Rodriquez posted a $1,000

cash bond. On Monday, September 12, 2011, Pina-Rodriquez was transferred to the custody of ICE. On Wednesday, September 14, 2011, Pina-Rodriquez was transferred to the custody of Hemphill County pursuant to a criminal bench warrant issued by Judge Briant. That same date, September 14, 2011, DHS issued a second ICE hold. Hall also complains about this second hold, alleging that it was illegal for ICE to issue a second immigration detainer.

After Hall failed to appear at the time for trial, Pina-Rodriquez' September 20, 2011 trial setting was postponed. On Friday, September 23, 2011, Pina-Rodriquez was once again transferred to the custody of ICE. On Wednesday, October 12, 2011, Pina-Rodriquez was transferred to the custody of Hemphill County pursuant to a criminal bench warrant issued by Judge Briant. On Thursday, October 13, 2011, a jury found Pina-Rodriquez guilty of committing deadly conduct. He was sentenced to time already served. On Tuesday, October 18, 2011, Pina-Rodriquez was transferred to the custody of ICE. He was subsequently deported to Mexico.

In essence, *pro se* Plaintiff Hall alleges that Hemphill County Sheriff Morse Burroughs violated Hall's contractual right to obtain Pina-Rodriquez' release on bond during Hall's legal representation of Pina-Rodriquez in one of Pina-Rodriquez' criminal cases. Hall alleges that he was Pina-Rodriquez' criminal defense attorney in numerous state-court criminal cases, but this case only concerns bond in one of those criminal cases. Hall alleges, in part, that Hall sought to have Sheriff Burroughs accept a $1,000 check, drawn on Hall's law firm's checking account, to post a cash bond for Pina-Rodriquez. Hall alleges that Burroughs violated Hall's state-statutory right to post an "attorney bond" for Pina-Rodriquez when Burroughs allegedly initially refused to accept the check. Hall alleges that when Sheriff Burroughs later accepted a check for the bond, Burroughs and the Department of Homeland Security and/or its Immigration and Customs Enforcement agency, acting by and though three federal employees, conspired and colluded to violate Pina-Rodriquez'

-3-

constitutional rights, and Hall's contractual and statutory rights, to obtain the pre-trial release on bond of Hall's client, Pina-Rodriquez.

Specifically, Hall complains that ICE wrongfully issued two immigration removal detainers (ICE holds or ICE detainers) to Sheriff Burroughs for Pina-Rodriquez. Hall alleges that this was "probably" a violation of federal regulations which, he alleges, limit the use of such ICE holds to one issuance. Hall alleges that both the first and the second ICE holds caused harm to both Pina-Rodriquez and Hall by effectively denying Hall's alleged statutory right to have the Hemphill County Sheriff's Office accept his "attorney bond." Hall also complains that these actions interfered with his attorney-client contract with Pina-Rodriquez, and infringed upon Hall's vested property right to practice law by representing Pina-Rodriquez in the pending criminal case.

The first ICE hold was issued before Pina-Rodriquez had successfully obtained reduction of his bond from $2,500 to $1,000. After reduction had become effective and the bond posted, but within the 48-hour "hold" period (calculated to not include weekends and federal holidays), ICE took Pina-Rodriquez into its custody for deportation proceedings. Before Pina-Rodriquez was deported and while he was in ICE's custody, Pina-Rodriquez was bench warranted by the court back to Hemphill County to stand trial for the last of his criminal cases. Pina-Rodriquez was found guilty and sentenced to time already served in custody. Apparently Pina-Rodriquez was given credit on his conviction for time in ICE's custody. The second ICE detainer was issued to return Pina-Rodriquez to ICE from Sheriff Burroughs' custody after trial and sentencing. Almost all of the bond funds were taken for Pina-Rodriquez' court costs pursuant to a state court order. A Mexican national, Pina-Rodriquez was subsequently deported to Mexico, where Hall alleges he still resides.

Under those facts and in this lawsuit, Hall seeks a declaratory judgment that ICE could not rightfully issue the second ICE detainer for return of Pina-Rodriquez from the custody of the

Hemphill County jail to ICE.  Hall alleges that ICE is legally limited to issuance of only "one hold per illegal immigrant."  Hall cites no binding, or persuasive, legal authority for that position.

Hall further seeks a declaratory judgment that ICE and Sheriff Burroughs violated Hall's statutory right to post an "attorney bond" by use of ICE detainers.  Hall seeks a declaratory judgment that ICE and Sheriff Burroughs unconstitutionally violated Hall's vested property right to practice law by effectively delaying the time Hall was permitted to post an acceptable "attorney bond."  Hall complains that Sheriff Burroughs delayed acceptance of the $1,000 check until Thursday afternoon, instead of accepting it on a preceding date.  Hall complains that if accepted earlier, by not later than Wednesday, the first ICE detainer would have naturally expired on Friday afternoon, upon the conclusion of its 48-hour hold period.  By waiting until Thursday afternoon, Hall complains that the ICE hold did not expire before the following Monday afternoon, after ICE had picked up Pina-Rodriquez.

Hall complains that the DHS/ICE agents went to the Hemphill County jail on Monday morning and took Pina-Rodriquez into ICE custody, just before the hold expired.  Hall alleges that this procedure violated Hall's contractual right to effectively represent Pina-Rodriquez in one or more of his pending criminal cases, thereby violating Hall's constitutional right to practice law. Finally, Hall seeks various declaratory judgments to the effect that Jairo Pina-Rodriquez was: 1) wrongfully deported by DHS, 2) is eligible for permission to reenter the U.S.A., 3) is entitled to fees and costs under the Equal Access to Justice Act, and 4) that Hall and Pina-Rodriquez have a right to favorable declaratory judgments from this Court on numerous grounds generally relating to how ICE detainers are and are not permitted to be issued, and/or are limited pursuant to various federal constitutional provisions, statute, rules, and regulations.

## SUMMARY JUDGMENT STANDARDS

The Court may terminate litigation by rendering a summary judgment where no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986)(initial burden is on movant to show entitlement to summary judgment with competent evidence). A material fact issue is one that might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The substantive law governing the case will identify which facts are material. *Id.,* 477 U.S. at 249, 106 S.Ct. at 2510. The party opposing judgment must point the Court to "specific facts with sufficient particularity to meet all the elements necessary to lay a foundation for recovery, including those necessary to negate the defense" offered by movant. *Brown v. Texas A&M University,* 804 F.2d 327, 333 (5th Cir. 1986)./[1]

Summary judgment disposition is inappropriate if the evidence before the Court, viewed as a whole, could lead to different factual findings and conclusions. This Court must resolve "all factual uncertainties and mak[e] all reasonable inferences in favor of the nonmoving party." *Bienkowski v. American Airlines*, 851 F.2d 1503, 1504 (5th Cir. 1988). If a rational trier of fact based upon the record as a whole could not find for the non-moving party, there is no genuine issue for trial. *Amoco Prod. Co. v. Horwell Energy, Inc.,* 969 F.2d 146, 147-48 (5th Cir. 1992). Such a finding may be supported by the absence of evidence necessary to establish an essential element of the non-moving party's case. *Celotex Corp. v. Cartrett,* 477 U.S. at 322.

---

[1]     *Accord Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Celotex Corp.,* 477 U.S. at 323-25, 106 S.Ct. at 2553; *Liberty Lobby, Inc.,* 477 U.S. at 247-48, 106 S.Ct. at 2510. The nonmoving party must designate specific facts showing there exists a genuine issue of material fact on those elements sought to be negated by the movant. *Ibid.*

"Finally, where the non-moving party has presented evidence to support the essential elements of its claims but that evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 249-50, 106 S.Ct. at 2510-11 (citations omitted). Legal conclusions and general allegations do not satisfy this burden. *Id.*, 477 U.S. at 250, 106 S.Ct. at 2511; *Lechuga v. Southern Pacific Transp. Co.*, 949 F.2d 790, 798 (5th Cir. 1992)(conclusory statements in affidavits do not provide facts that will counter summary judgment evidence, and testimony based on conjecture alone is insufficient to raise an issue to defeat summary judgment); *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985)(party affidavits setting forth only ultimate or conclusory facts are insufficient to either support or defeat a motion for summary judgment).

## STANDING

A plaintiff asserts Article III standing to sue in federal court by alleging an "irreducible constitutional minimum" of three elements:  (1) an injury in fact – in other words, an invasion of a legally protected interest which is (a) concrete and particularized ... and (b) actual or imminent, not conjectural or hypothetical; (2) a causal connection between plaintiff's alleged injury and defendant's alleged behavior; and (3) a likelihood that the alleged injury will be redressed by a decision in plaintiff's favor. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)(quoting *Whitmore v. Arkansas*, 495 U.S. 149, 155, 110 S.Ct. 1717, 109 L.Ed.2d 135 (1990))(citations omitted).

A plaintiff's standing to sue and his status as the real party in interest are interrelated concepts, yet conceptually distinct.  Standing is a constitutional requirement that asks "'whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues.'" *Allen v. Wright*, 468 U.S. 737, 750-51, 104 S.Ct. 3315, 82 L.Ed.2d 556 (quoting *Warth v. Seldin*, 422 U.S.

490, 498, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975)). A "real party in interest" is the party in whose

name a federal civil action "shall be prosecuted . . .." Fed. R. Civ. Pro. 17(a). A real party in interest

must be "the party who, by the substantive law, has the right sought to be enforced." *Lubbock Feed*

*Lots, Inc. v. Iowa Beef Processors, Inc.*, 630 F.2d 250, 257 (5th Cir. 1980). The real party in interest

examination is similar to the Article III standing question. The notable distinctions include: 1)

standing requires a glance at the merits in order to establish injury in fact: *but cf. Lenhard v. Wolff*,

443 U.S. 1306, 1310, 100 S.Ct. 3, 61 L.Ed.2d 885 (1979)(asserting that standing does not involve

weighing the merits of claims in any fashion); 2) standing cannot be waived; and 3) a court may

challenge a plaintiff's standing *sua sponte*. *See, generally* 6A Charles Alan Wright, Arthur R. Miller

& Mary Kay Kane, *Federal Practice and Procedure* § 1542, at 330-33 (2d ed. 1990).

## DISCUSSION AND ANALYSIS

### *Standing*

*Pro se* Plaintiff Hall does not individually have standing to assert any individual claims or

causes of action that properly belonged to former Plaintiff Jairo Pina-Rodriquez. All of those claims

have been dismissed[2]. Likewise, Hall acting *pro se* does not have individual standing to seek

declaratory judgment on the legality of agency actions taken by DHS and/or ICE regarding ICE holds

or ICE detainers on Pina-Rodriquez while he was in the custody of either the Hemphill County jail,

Sheriff Burroughs, or a federal agency. Hall as a *pro se* individual does not have standing to seek

---

[2]     If they had not been dismissed with prejudice, as a *pro se* plaintiff Hall impermissibly
injected ethical conflicts in this case. As a plaintiff, Hall has a monetary interest in this lawsuit; he seeks
monetary damages on his own behalf, including damages for loss of reputation. Hall's interests are
adverse to his client and former co-plaintiff, Plaintiff Pina-Rodriquez. Hall can not, as both a plaintiff
and Pina-Rodriquez' attorney, argue to a jury how damages should be apportioned between him and his
client. Plaintiff Hall created a conflict of interest with his client when, without leave of Court, Hall
added himself as a party to his client's lawsuit. For this additional reason, Hall's *pro se* claims should
not have be added to Pina-Rodriquez' lawsuit.

a declaration from this Court as to whether or not any of those actions conformed to official DHS/ICE policies, rules or regulations, or were constitutional. All of the alleged DHS/ICE actions were not taken against Hall, directly or indirectly; they were taken directly against his client, Pina-Rodriquez.

Hall himself does not have standing to seek a declaratory judgment that Jairo Pina-Rodriquez was wrongfully deported, was eligible or is eligible for permission to reenter the U.S.A., or has a right to an order declaring such from this Court. Such rights, claims and causes of action, while possibly of some personal or general professional interest to attorneys practicing criminal or immigration law, legally belong to the person so detained or deported, not to Hall individually. The right to pre-trial release upon posting of a court-approved bond belonged to Pina-Rodriquez, the client, not his attorney Steve Hall. The right to sue for alleged violations of that right belongs to Pina-Rodriquez, not to *pro se* Plaintiff Hall.

### Joinder of a New Party Plaintiff and New Party Defendants

The Rule 16 deadline to join parties expired on November 18, 2013. Hall's amended complaint adding himself as a *pro se* party-plaintiff was filed on March 25, 2014. Joinder of Hall as a new plaintiff was untimely, and neither excused or permitted by this Court.

The deadline for amended complaints expired on March 31, 2014. Plaintiff Hall's untimely motion to join ICE as a party defendant in this lawsuit was filed April 28, 2014. Plaintiff Hall's motion for leave to file a supplemental complaint joining four new party-defendants – ICE and three others– was untimely filed on June 18, 2014. Hall's motion to add ICE to this suit was over five (5) months too late. Hall's motion to join three additional party defendants was six (6) months too late. At the time of Plaintiffs' filings, Defendant had already filed dispositive motions to dismiss and for summary judgment, to which responses and replies have been filed. Joinder of new party defendants

is untimely, and has been neither excused or will be permitted by this Court.

There is no reason offered why attorney Hall did not sue DHS and/or ICE when he filed Pina-Rodriquez' original state court petition. *Pro se* Plaintiff Hall personally knew the basic facts concerning the use of ICE detainers on Pina-Rodriquez well before May of 2013. He knew those alleged facts in June, 2012, and learned of additional facts through September to December of 2012, while Hall was representing Pina-Rodriquez in the Hemphill County criminal case. This is evidenced by Hall's pled facts in his original petition, filed in state court on May 22, 2013. Those operative facts about use of ICE detainers were clearly pled, *see* ¶¶ 9, 11, 13, 19-27, 31-32, and 39-63 of Plaintiff's original petition, and were the factual basis for his numerous requests for declaratory and injunctive relief specifically concerning ICE and Sheriff Burroughs' allegedly unconstitutional use of ICE detainers against Pina-Rodriquez to deny him pretrial release in his criminal case. *See id.* at ¶¶ 72-73, 78-79, 82-84, 87-88.

The grounds offered to excuse Hall's untimely motions to join parties and reopen all Rule 16 deadlines – allegedly newly-discovered information about yet another Hemphill County district court criminal case number – does not change the fact that Hall personally knew all of the core operative facts regarding use of multiple ICE detainers to deny Pina-Rodriquez pretrial release on bond, allegedly by the Sheriff's office working "in conspiracy" with ICE agents. *See id.* Hall concedes that the "violation of Plaintiff Pina-Rodriquez' civil rights to Due Process and Pre-Trial [sic] release on bail occur from the same fact pattern and series of occurrences, and the question of fact and law are common to ICE and the current Defendant Sheriff Burroughs." *See* ¶ 15 of Hall's motion to join ICE as a defendant, filed April 28, 2014 (document #41). Hall knew of those facts before this case was even filed.

*Pro se* Plaintiff Hall was fully aware of the U.S. Immigration and Customs Enforcement's involvement in Plaintiff Pina-Rodriguez' claims. Plaintiff's amended complaint clearly sets out Pina-Rodriguez' alleged transfer dates, and cites multiple transfers to "ICE custody." *See* Doc. #33 at ¶40, *et seq.* Plaintiff Hall was aware of the second immigration detainer well before April 28, 2014, the filing date for Plaintiff's motion to join ICE as a defendant. Hall knew or should have known in September of 2012, when Hall first learned that the second detainer had been issued, that under his theory of the law Hall and/or Pina-Rodriquez had a potential cause of action against the U.S. Immigration and Customers Enforcement agency. Hall had all of the information necessary, as well as the pleading ability, to sue or timely join ICE as an additional defendant well before the deadlines imposed by the Rule 16 scheduling order, if not from the time this case was first filed.

Hall's motions are therefore untimely, and good cause has not been shown why the claims against each of the new parties he seeks to add to this case could not have been brought when this case was first filed on May 22, 2013.

In addition, Plaintiff Hall's joinder of himself as a new party plaintiff exceeds the boundaries of this Court's Memorandum Opinion and Order issued on March 11, 2014. That order stated:

> The § 1983 claims remaining at this time in this lawsuit are the Plaintiffs Eighth and/or Fourteenth Amendment claims arising from alleged violations of his due process right to pre-trial release on bail that is not excessive. However, the specific facts underlying those claims are not clearly pled. It is unclear which of his numerous criminal cases he was denied release upon, which cases he sought bail in, which he did not seek bail in, if any, what form of bail was sought and denied as sought in which criminal cases, which forms of bail were approved by the presiding criminal court, in what amounts, and when, if that approved form or amount was reduced upon motion, or not, if any bail set was or was not excessive, and what causal effect or role, if any, the Hemphill County sheriffs office's custom, practices

and policies regarding ICE holds had under those facts. Plaintiff may file an amended complaint setting forth in detail all of the alleged facts upon which his denial of bail claims are based. The Court will thereafter address Sheriff Burroughs' qualified immunity defense to that claim. Any such amended complaint must be filed on or before fourteen (14) days from the date of this order.

Instead of filing an amended complaint that clarified Pina-Rodriguez' claims, attorney Hall filed an amended complaint that added himself as a *pro se* Plaintiff. That filing did not comply with the limited permission given by the Court to clarify the claims attempted to be pled on Pina-Rodriquez's behalf. It exceeded the Court's permission.

### *Limitations Bars the Claims Against the Proposed New Party Defendants*

This Court's March 11, 2014, order further stated:

> Plaintiff's complaint is extensive and convoluted, and it is sometimes difficult to follow and understand the relief he is seeking and the alleged legal basis for each of his claims. Nevertheless, the Court has liberally construed Plaintiff's complaint in the light most favorable to him. Plaintiff clearly alleges state-law based claims of violations of the Texas constitution and Texas statutes. As a § 1983 federal civil rights action those claims are not viable, for reasons explained above. Plaintiff's [state-law based and federal] intentional tort claims are also not viable for reasons explained above. The Court declines to exercise its supplemental jurisdiction over the Plaintiff's other remaining claims which are solely based upon Texas law, and those claims are hereby dismissed without prejudice. The remedy for those alleged violations is in the state courts.

Part of the Court's discussions and conclusions set forth in the Court's memorandum opinion and order of March 11, 2014 are relevant to this order because *pro se* Plaintiff Hall re-alleges those claims on his own behalf. Specifically, Hall re-alleges that certain named federal ICE agents and Sheriff Burroughs jointly conspired to deny Plaintiff his contractual, state-law based, and state and federal constitutional due process right to have his client released from jail on bond pending trial on

his criminal charges by use of ICE holds, verbally conveyed and/or written and conveyed.  Hall re-alleges that Hall's rights were further violated by *when* Pina-Rodriguez was taken into, and transferred into and out of, federal custody for trial on his state-court criminal charges.  *Pro se* Plaintiff Hall, individually, seeks declaratory relief and damages on all of those claims.

While Hall individually named, but did not initially sue, ICE itself or any of the individually-named ICE agents, Hall now seeks to do so.  However, those federal conspiracy claims sound in tort and, if they are properly actionable in federal court against ICE, acting through its employees, agents and co-conspirators, must first be brought under the Federal Tort Claims Act, 28 U.S.C. §§ 2671-2680.  *Pro se* Plaintiff Hall still has not shown that he (or Pina-Rodriquez) filed an administrative claim for damages under that Act.

Timely administrative filings of conspiracy, violation of substantive and procedural due process rights, and similar tort claims with the appropriate government agency is required by 28 U.S.C. § 2675(a).  Such claims – brought in either a timely administrative process or here pursuant to § 1983 – must be pursued before the two-year period of limitations has run.  *See Stanley vs. Foster,* 464 F.3d 565, 568 (5th Cir. 2006) (statute of limitations for § 1983 claims based upon due process violations or other alleged injury to the person is two years); 28 U.S.C. § 2401(b) (two year limitations period for administrative tort claims).  That two-year period began under the facts of this case on either June 9, 2011 (when Hall personally and Pina-Rodriguez through Hall claim they first learned that the initial ICE detainer was allegedly wrongfully used), on September 14, 2011 (when the second ICE detainer was allegedly illegally issued), or on December 1, 2011 (the day the last complained-of date pled in Plaintiff's complaint regarding a federal agent's co-conspirators' actions).  In any event, the two-year limitations period expired during 2013.

Failure to timely file a claim mandates dismissal of Plaintiff's federal tort conspiracy claims as pled here, *Uithoven v. U.S. Army Corps of Engineers*, 884 F.2d 844, 846 (5th Cir. 1989), because "[e]xhaustion of administrative remedies is jurisdictional prerequisite to suit under the Federal Tort Claims Act, and absent compliance with the statute's requirement the district court [i]s without jurisdiction." *McAfee v. Fifth Circuit Judges*, 884 F.2d 221, 222-23 (5th Cir. 1989)(citing *Rise v. United States*, 630 F.2d 1068, 1071 (5th Cir. 1980); 28 U.S.C.A. §§ 1346(b), 2671 *et seq.*).[3]

*Pro se* Plaintiff Hall states that he is not alleging, nor does he seek to bring, a federal torts claim against ICE or DHS, or their employees, or Defendant Burroughs. Hall pleads that he is trying to assert only a federal civil rights claims pursuant to § 1983. However, assuming that Hall can avoid the legal effects of the obvious fact that he is clearly trying to plead a conspiracy/collusion tort claim against specific federal employees and their agency itself, "the accrual date of a § 1983 cause of action is a question of federal law that is not resolved by reference to state law." *Wallace v. Kato*, 549 U.S. 384, 388, 127 S.Ct. 1091, 166 L.Ed.2d 973 (2007). Under federal law, such claims generally accrue "the moment the plaintiff becomes aware that he has suffered an injury or has sufficient information to know that he has been injured" and that there is a connection between his injury and the defendant's actions. *Piotrowski v. City of Houston*, 237 F.3d 567, 576 (5th Cir. 2001)(internal quotation marks and citation omitted). That accrual date would be, under the facts of this case, on June 9, 2011, which is the date Hall says Pina-Rodriquez was wrongfully denied release on bond because of the first ICE hold. Limitations ran on that claim on June 10, 2013. Even

---

[3]     Exhaustion of administrative remedies is a jurisdictional prerequisite to suit under the Federal Tort Claims Act, and absent compliance with the statute's requirement a federal district court is without jurisdiction. *Uithoven v. U.S. Army Corps of Engineers*, 884 F.2d 844, 846 (5th Cir. 1989); *Rise v. United States*, 630 F.2d 1068, 1071 (5th Cir. 1980). Claims not brought under the Federal Tort Claims Act but founded on the United States Constitution, not state tort law, are constitutional claims that do not arise under the Act and are barred by sovereign immunity, unless one of the limited exceptions to sovereign immunity are present. *Uithoven*, 884 F.2d at 846; *Boda v. U.S.*, 698 F.2d at 1176.

though Hall was aware that he (and his client) had suffered an injury, had sufficient information to know why and how Hall had been allegedly personally injured, and in fact Hall says that he made the connection between the injuries to himself and to Pina-Rodriquez caused by ICE's actions, Hall did not seek to assert a claim against any DHS/ICE entity or person until April 28, 2014. That was long after the deadline to join parties. That was long after limitations had run.

"[W]here it is clear from the face of a complaint ... that the claims asserted are barred by the applicable statute of limitations, those claims are properly dismissed" under 28 U.S.C. § 1915. *Gartrell v. Gaylor,* 981 F.2d 254, 256 (5th Cir. 1993). That time began, at a minimum, when Pina-Rodriquez and Hall "began experiencing the negative effects of the" denial of bond and Hall's alleged right to an "attorney bond." *Ivie v. Abbott,* ___ Fed. Appx. ___, 2014 WL 3974578 (5th Cir. August 15, 2014). Those negative effects began, as Hall and Pina-Rodriquez alleged, on June 10, 2011 – the day after the first ICE hold was allegedly received by the Sheriff's department. Hall complains that the first ICE detainer prevented his ability, and violated his alleged contractual and statutory rights, to get Pina-Rodriquez released on bond. Hall further alleges these events harmed his reputation and caused him damages. Hall's own § 1983 claim are untimely, and a federal court may dismiss them without further considering the underlying merits of his claims, or the other meritorious defenses asserted here by Defendant Burroughs. *See Gartrell,* 981 F.2d at 256.

Such federal tort and § 1983 claims, if Hall intends to allege them in this case against ICE, DHS, other DHS agencies, or any of named federal employees and/or federal or state agents on a co-conspirator liability basis, are again dismissed with prejudice for failure to exhaust administrative remedies, and because limitations has run.

## CONCLUSIONS

For all of the reasons set forth above, Defendant Morse Burroughs' motions to dismiss and for summary judgment are granted.

Plaintiff Steve Hall's untimely motions for leave to file an amended complaint and a supplemental complaint adding himself as a *pro se* plaintiff, adding four new party defendants, to reopen discovery, and for extensions of other Rule 16 deadlines, are denied.

A final judgment for Defendant Morse Burroughs, individually and in his official capacity as Hemphill County Sheriff, will be entered.

It is SO ORDERED.

Signed this the _____ 29 _____ day of October, 2014.

**MARY LOU ROBINSON**
UNITED STATES DISTRICT JUDGE